UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TOMÁS NIEMBRO-CONCHA,<br><br>*Plaintiff*,<br><br>v.<br><br>NATALIA ZEQUEIRA-DIAZ, *et al.*,<br><br>*Defendants*. | Civ. No. 24-cv-01232 (MAJ) |

**OPINION AND ORDER**

### I.   Introduction

On May 24, 2024, Tomás Niembro-Concha ("Plaintiff") filed the instant action against the Office of Commissioner of Financial Institutions of Puerto Rico ("OCFI") and its Commissioner, Natalia Zequeira-Díaz ("Zequeira"), in her official capacity (collectively "Defendants"). (**ECF 1**). Plaintiff brings this suit pursuant to 42 U.S.C. § 1983 and seeks declaratory and injunctive relief for alleged violations of his Eighth and Fourteenth Amendment rights. (**ECF 1 at 1**). Pending before the Court is Defendants' *Notice of Injunction Pursuant to the Confirmation Order Issued by the Title III Court* ("Notice of Injunction"). (**ECF 16**). For the reasons stated hereafter, the Court **DENIES** the relief requested in Plaintiff's Notice of Injunction.[1]

### II.   Background

Plaintiff is a Venezuelan banker and shareholder of Nodus International Bank

---

[1] In making this determination, the Court reviewed the Complaint, Notice of Injunction, Plaintiff's response, Defendants' reply, and Plaintiff's surreply. (**ECF 1, 16, 22, 25, 30**).

("Nodus"), an international banking institution that was granted a banking license in 2009 by OCFI. (**ECF 1 at 2 ¶ 3**). According to Plaintiff, Defendant OCFI was "created to safeguard the interests of bank shareholders and depositors" and is "charged with regulating Puerto Rico's financial industry." (**ECF 1 at 5 ¶ 22, 6 ¶ 25**). Plaintiff alleges that OCFI has a history of discriminating against international banks. (**ECF 1 at 9 ¶ 33– 11 ¶ 40**).

On January 18, 2022, OCFI commenced a review of Nodus. (**ECF 1 at 12 ¶ 45**). According to Defendants, this review was one of several examinations they conducted of Nodus "as part of their duties to regulate financial institutions in Puerto Rico." (**ECF 17 at 5 ¶ 3**). The results of this examination, which were negative for Nodus, were delivered on October 13, 2022. (**ECF 1 at 12 ¶ 45**). According to Plaintiff, Nodus then responded to OCFI's report with a proposed plan for improvement. (**ECF 1 at 12 ¶ 46**). Then, on March 9, 2023, OCFI ordered Nodus liquidated. (**ECF 1 at 12 ¶ 47**). In October 2023, OCFI placed an administrator and receiver in charge of Nodus and the liquidation. (**ECF 1 at 13 ¶ 55**).

According to Defendants, the appointed receiver then uncovered a "substantial fraudulent scheme" to improperly transfer over $26 million away from Nodus to the benefit of Plaintiff and his partner, Ramírez. (**ECF 17 at 1–2**). Defendants allege that this scheme was made possible because of Nodus's liquidation. (**ECF 17 at 1–2**). As a result, on April 4, 2024, Defendants filed an Administrative Complaint against Plaintiff and Ramírez to pierce Nodus's corporate veil to hold them personally liable for $26 million, in addition to imposing personal restitution, fines, and a ban on doing business in Puerto Rico's financial industry for ten years (the "Order"). (**ECF 17 at 3, 5 ¶ 8, 6 ¶ 10**); (**ECF 1 at 2–3 ¶ 8**).

Plaintiff now seeks a declaratory judgment that the Order is void as ultra vires, violated his Fourteenth Amendment rights to equal protection and procedural and substantive due process, and violated the Eighth Amendment's prohibition on excessive fines. In addition, Plaintiff seeks a preliminary and permanent injunction enjoining enforcement of the Order. (**ECF 1 at 39**).

Plaintiff filed this action on May 24, 2024. (**ECF 1**). On June 25, 2024, Defendants filed the instant Notice of Injunction. (**ECF 16**). Defendants argue that this cause of action was discharged by the Title III Plan of PROMESA and is thus permanently enjoined. (**ECF 16 at 6 ¶ 13**).[2] This Court finds that the permanent injunction under the Title III Plan does not apply to the instant suit.

### III. Applicable law and analysis[3]

Because Plaintiff's cause of action did not "arise" prior to March 15, 2022, the discharge injunction under the Title III Plan does not apply. Section 92.2 of the Title III Plan discharged and released the Commonwealth of Puerto Rico from "any and all Claims, Causes of Action, and any other debts that arose, in whole or in part, prior to the Effective Date," meaning March 15, 2022. (**ECF 16-2 at 193, ECF 16-3 at 2**). Under Section 92.3, all parties are permanently enjoined from bringing any causes of action which were discharged or released under Section 92.2. (**ECF 16-2 at 196**). Thus, in order for the discharge injunction to apply to the present cause of action, the cause of action must have

---

[2] The automatic stay under PROMESA has been superseded by the permanent discharge injunction from the Title III Plan and is no longer in effect. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 650 B.R. 286, 294 (D.P.R. 2022).

[3] As an initial matter, this Court rejects Defendants' contention, raised for the first time in their Reply, that the Court lacks jurisdiction to interpret the terms of PROMESA, as is necessary to resolve the present issue. (**ECF 25 at 10**). The Title III Plan explicitly defines "Title III Court" as "The United States District Court of the District of Puerto Rico or such other court having jurisdiction over the Title III Cases." (**ECF 16-2 at 87**). Moreover, the Court reminds Defendants that it was them, not Plaintiff, who moved this Court to decide whether the discharge injunction under PROMESA applies to the present action. *See generally* **ECF 16.**

arisen, in whole or in part, prior to March 15, 2022.

As Plaintiff notes, the Title III Plan does not define the term "arose." (**ECF 22 at 11**). Because Defendants have raised the existence of the discharge injunction under the Title III Plan as an affirmative defense, it is Defendants' burden to establish that the injunction applies. *See In re Zayas*, 16-cv-6163, 2024 WL 4125700, at *1 (Bankr. D.P.R. Sept. 9, 2024).

The present action seeks a declaratory judgment that the Order issued on April 4, 2024 is void and unconstitutional, as well as a preliminary and permanent injunction prohibiting enforcement of the Order. (**ECF 1 at 39**); (**ECF 22 at 3**); (**ECF 25 at 4–5**).[4] In other words, the only relief Plaintiff requests relates to the April 2024 Order. Though the Complaint mentions events that occurred prior to the issuance of the Order, Plaintiff does not seek relief for any of those events. Yet, in order to meet their burden to establish that the injunction applies, Defendants vaguely argue that, because some of the factual events described in Plaintiff's Complaint occurred prior to March 15, 2022, Plaintiff's cause of action "arose . . . in part" prior to that date. (**ECF 16 at 7 ¶ 14–8 ¶ 17**). Defendants fail to articulate exactly when they believe Plaintiff's cause of action *did* arise, but their Notice of Injunction and Reply seem to focus on three sets of facts.

First, Defendants note that the Complaint states that in November 2019, Plaintiff

---

[4] "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Though Defendants make much of Plaintiff's repeated use of the word "damages" within each Count of his Complaint, Plaintiff clarifies that while he "inartfully alleged the amount in controversy for diversity jurisdiction simply as 'damages,'" what he meant to say was that he "*will be damaged . . . if* OCIF's . . . order is not held unenforceable and void ab initio through this action." (**ECF 22 at 2 n.1**) (emphasis added). Plaintiff has apologized for this error, which he explains was "borne of force of habit." (**ECF 30 at 6**). Despite this unfortunate error, it is clear that Plaintiff's action does not seek damages, but only declaratory and injunctive relief. *See Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009) (suits under Section 1983 may seek only equitable relief, without seeking damages) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).

and his partner Ramírez became the sole shareholders in Nodus Bank, and that Plaintiff eventually became the majority shareholder of the bank. (**ECF 16 at 7 ¶ 15**). However, Defendants do not attempt to explain why this fact would mean the action "arose" prior to 2022, nor did they mention or attempt to clarify this issue in their Reply. *See generally* **ECF 22**.

Second, Defendants highlight that Plaintiff's complaint contains facts about OCFI's allegedly discriminatory treatment of *other* foreign banks between 2017 and 2023. (**ECF 16 at 7 ¶ 16**). These facts were clearly included as support for Plaintiff's theory that OCFI discriminates against foreign banks generally; Plaintiff did not allege a single injury or example of discrimination against his own bank which occurred prior to the Effective Date. Defendants do not attempt to explain how treatment of other banks, completely separate from Plaintiff's own bank, could have caused Plaintiff's cause of action to arise at any point prior to March 2022.

Therefore, the only possible event which could have caused the present action to arise prior to March 15, 2022 was the commencement of OCFI's review of Nodus on January 18, 2022. (**ECF 1 at 12 ¶ 45**). However, the review started on that date was OCFI's fifth such review of Nodus. (**ECF 1 at 12 ¶ 45**). Defendants concede that this review was conducted "as part of [OCFI's] duties to regulate financial institutions in Puerto Rico." (**ECF 17 at 5 ¶ 3**). Defendants give no explanation as to why a routine review conducted as an ordinary part of Defendants' duties would give rise to this cause of action. Indeed, Plaintiff did not even receive the results of the investigation until October 13, 2022, at least six months after the Effective Date. (**ECF 1 at 12 ¶ 45**). Nodus was then ordered liquidated by Defendants in March 2023, (**ECF 1 at 12 ¶ 47**), and a receiver was appointed in October 2023. (**ECF 1 at 13 ¶ 55**). By Defendant's own

characterization, the Order which Plaintiff challenges was intended to recover funds from a scheme made possible by the liquidation, which the *receiver* uncovered. (**ECF 17 at 2**). In other words, the Order could not possibly have arisen before the allegedly fraudulent scheme itself, which was not uncovered until October 2023 at the earliest, and in any case could not have arisen prior to the liquidation in March 2023. And, according to the Complaint, Plaintiff tried several times between December 2022 and April 2024 to work with OCFI and/or the appointed receiver to create a plan to respond to the concerns raised by OCFI's investigation. (**ECF 1 at 12 ¶¶ 46–48, 14 ¶ 61–16 ¶ 67**). The commencement of the review on January 18, 2022, is simply too removed from the actual Order being challenged here to determine that the present cause of action "arose" on that date.

Because none of the events listed in the Complaint which occurred prior to the Effective Date could possibly be understood as dates on which the present cause of action "arose," even in part, Defendants have failed to meet their burden to establish that the discharge injunction applies to the present case. Defendants provide no caselaw to support their novel, albeit non-specific, interpretation of when a cause of action "arises" for purposes of the discharge injunction. In fact, the few cases to which Defendants do cite on this issue were filed prior to the Effective Date and revolved around claims which clearly arose prior to the Effective Date. *In re Bernier*, 17-3544, 2024 WL 1608580 (Bankr. D.P.R. April 12, 2024) (action filed in 2020, regarding violation of the discharge injunction which occurred in 2020); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 650 B.R. 286 (D.P.R. 2022) (action commenced in 2020, based on causes of action which accrued in 2005); *Vélez-Molina v. Rivera-Schatz*, 20-1565, 2023 WL 6536235 (D.P.R. Sept. 29, 2023) (action filed in 2020, regarding specific examples of actionable employment discrimination which occurred between 2017 and 2019). Indeed, this Court is not aware

of a single case applying the Title III discharge injunction which was even *filed* after the Effective Date, let alone where the sole injury at issue occurred after the Effective Date. *Cf. Villalobos-Santana v. Puerto Rico Police Bureau*, 21-1312, 2024 WL 3152641, at *1 (D.P.R. June 5, 2024) (action filed in 2021 was subject to discharge injunction); *Estancias de Cerro Mar, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 20-1664, 2023 WL 7926027 (D.P.R. Nov. 15, 2023) (action filed in 2020 was subject to discharge injunction); *In re Zayas*, 2024 WL 4125700 (action filed in 2016 was subject to discharge injunction).

## IV. Conclusion

Because Plaintiff's cause of action did not "arise" prior to the Effective Date, it is not subject to the permanent injunction under the Title III Plan. Nor will the action be stayed, as the automatic stay under PROMESA has been superseded by the permanent injunction and is thus no longer in effect. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 650 B.R. at 294. Because the discharge under Section 92.2 of the Title III Plan does not apply to the present case, Court declines to reach the remaining issues. Defendants' Notice of Injunction is **DENIED**, and the case will proceed.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 24th day of January, 2024.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**