UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **TOMÁS NIEMBRO-CONCHA,**<br><br>*Plaintiff*,<br><br>v.<br><br>**NATALIA ZEQUEIRA-DIAZ,** *et al.*,<br><br>*Defendants*. | Civ. No. 24-01232 (MAJ) |

**OPINION AND ORDER**

### I.  Introduction

On May 24, 2024, Tomás Niembro Concha ("Plaintiff") filed the instant action against the Office of Commissioner of Financial Institutions of Puerto Rico ("OCFI") and its Commissioner, Natalia Zequeira Díaz ("Zequeira"), in her official capacity (collectively "Defendants"). (**ECF 1**). Plaintiff brings this suit seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. (**ECF 1 at 1**). On June 25, 2024, Defendants filed a Motion to Dismiss the Complaint for lack of jurisdiction. (**ECF 17**). Because the Court finds that Plaintiff's suit is not ripe for adjudication, Defendants' Motion to Dismiss is **GRANTED**.[1]

### II.  Background

Plaintiff is a Venezuelan banker and shareholder of Nodus International Bank

---

[1] In making this determination, the Court reviewed the Complaint (**ECF 1**), Defendants' Motion to Dismiss (**ECF 17**), and Plaintiff's response (**ECF 35**), along with the exhibits and translations thereto. The Court also reviewed Defendants' Motion Requesting Order Staying Proceedings (**ECF 36**), Plaintiff's Response (**ECF 44**), and Defendants' Reply (**ECF 47**), the exhibits and translations thereto, and the totality of the record.
  Because this Court finds that it lacks subject matter jurisdiction to hear the above-captioned case, the Court will not "delve into defendant's alternative grounds for dismissal" under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Menéndez v. United States*, 67 F. Supp. 2d 42, 47 n.2 (D.P.R. 1999).

("Nodus"), an international banking institution that was granted a banking license in 2009 by OCFI. (**ECF 1 at 2 ¶ 3**). According to Plaintiff, Defendant OCFI was "created to safeguard the interests of bank shareholders and depositors" and is "charged with regulating Puerto Rico's financial industry." *Id.* at 5 ¶ 22, 6 ¶ 25. In March 2023, after conducting a series of reviews and investigations of Nodus, (**ECF 17 at 5 ¶ 3**), OCFI ordered Nodus to liquidate its operations. (**ECF 1 at 12 ¶ 47**). In October 2023, OCFI appointed Driven Administrative Services LLC ("Driven") as receiver for Nodus and administrator for Nodus's liquidation plan. *Id.* at 12 ¶ 49, 13 ¶ 55.

On April 4, 2024, OCFI filed an Administrative Complaint against Plaintiff purporting to pierce Nodus's corporate veil to hold him and his partner personally liable for the debts of Nodus, in addition to imposing personal restitution, fines, and a ban on doing business in Puerto Rico's financial industry for ten years (the "Administrative Complaint"). (**ECF 1 at 2–3 ¶ 8**). The Administrative Complaint initiated a formal adjudicative proceeding against Plaintiff ("Administrative Proceedings"), during which Plaintiff was given the opportunity to respond to the claims brought against him, request a hearing, and conduct discovery. (**ECF 1-5 at 41**).[2]

On May 24, 2024, Plaintiff filed the instant suit in the District of Puerto Rico, seeking to have the Administrative Complaint declared void and unenforceable and to enjoin the Administrative Proceedings. (**ECF 1 at 39**). Plaintiff has repeatedly clarified that his action does not seek damages because he has not yet suffered any concrete harm. *See, e.g.*, (**ECF 22 at 2 n.1**) ("The Complaint inartfully alleged . . . 'damages,' which this

---

[2] The Court notes that Plaintiff failed to submit a certified English translation of the portion of the Administrative Complaint which describes his opportunities to submit a response and request a hearing. The certified English translation submitted at ECF 1-5 at 2–8 conveniently omitted these portions of the Administrative Complaint, which can be found in Spanish at ECF 1-5 at 41 and summarized in English in Defendant's Motion to Dismiss at ECF 17 at 25–26.

action does not seek. For clarity, the complaint alleged that [Plaintiff] *will be damaged . . .* by the fines, sanctions and many millions of dollars in restitution and personal liability he will suffer *if* OCIF's unlawful, ultra vires, unconstitutional order is not held unenforceable and void ab initio through this action.") (emphasis added).

On February 6, 2025, Driven filed a lawsuit against Plaintiff in the Southern District of Florida (Case No. 25-20550) ("the Driven Case"). (**ECF 36 at 2**); (**ECF 52-3 at 1**). As a result, on February 10, 2025, OCFI filed a motion to stay the Administrative Proceedings. (**ECF 36 at 3**); (**ECF 52-3 at 1**). OCFI requested this stay because the Administrative Complaint "basically contains the same allegations" as those brought in the Driven Case. (**ECF 52-3 at 1**). An Order was issued staying the Administrative Proceedings against Plaintiff until the complaint filed by receiver Driven is resolved," noting "judicial economy" and the interest in "avoiding having two parallel adjudicative proceedings and the possibility of conflicting determinations being issued." *Id*. All hearing and status conference dates previously set in the Administrative Proceedings were vacated. *Id*.

### III. Legal Standard

When considering a Motion to Dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts should credit a plaintiff's well-pleaded factual allegations and draw all reasonable inferences in Plaintiff's favor. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The Court may also consider "extra-pleading material" when considering a jurisdictional issue under Rule 12(b)(1). *Villanueva Hernández v. Veterans Administration*, 2018 WL 1721753, at * 2 (D.P.R. 2018) (citing *Wojciechowicz v. United States*, 530 F. Supp. 2d 421, 424 (D.P.R. 2007). If a court finds that federal subject matter jurisdiction does not exist, "it must dismiss the case and not

make any determination of the merits of the same." *Menéndez v. United States*, 67 F. Supp. 2d 42, 45 (D.P.R. 1999).

## IV. Applicable Law and Analysis

Article III of the U.S. Constitution restricts federal court jurisdiction to "cases and controversies." U.S. CONST. art. III, § 2. Among the justiciability doctrines contained in Article III, the doctrine of ripeness "seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). The party seeking jurisdiction bears the burden of alleging sufficient facts to demonstrate ripeness. *Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016).

As noted by the United States Supreme Court, ripeness exists only where there is "a substantial controversy between parties having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)) (emphasis added). The test for ripeness requires analyzing two prongs: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003). The fitness prong includes considering whether the claim, "though predominantly legal in character, depends on future events that may never come to pass." *Id.* (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995)). If so, the claim is unripe because it would require the federal courts to "decid[e] issues unnecessarily, wasting time and effort." *McInnis-Misenor*, 319 F.3d at 72. A long "chain of contingencies lying between the plaintiff's current state and their

complained-of future injury" will support a conclusion that a claim is not yet fit for review. *See id*. The hardship prong, in turn, focuses on "whether the challenged action creates a direct and immediate dilemma for the parties," and is not concerned with "wholly contingent harm." *W.R. Grace & Co.–Conn. v. U.S. E.P.A.*, 959 F.2d 360, 364, 367 (1st Cir. 1992). Before an action under 42 U.S.C. § 1983 challenging an administrative proceeding can become ripe, "at least some definitional administrative or institutional determination must exist." *Raper v. Lucey*, 488 F.2d 748, 751 n.3 (1st Cir. 1973); *see also San Juan Cable LLC v. Telecomms. Regul. Bd. of Puerto Rico*, 11-cv-2152, 2012 WL 359464, at *3 (D.P.R. 2012) (dismissing case for lack of ripeness because it involved "a determination issued by the Board that is not yet a final administrative determination subject to administrative or judicial review.").

The ripeness issues in the instant case are not new. They have existed from the outset because, to date, the Administrative Proceedings initiated by the OCFI, which might be subject to judicial review, have not resulted in a final determination against Plaintiff. This fact alone is likely sufficient to dismiss the case based on ripeness. *See San Juan Cable*, 2012 WL 359464, at *3.

Indeed, Defendants raised the issue of ripeness in their first Motion to Dismiss, filed on June 25, 2024. (**ECF 17**). In his response to that motion, filed over six months later on February 7, 2025, Plaintiff failed to articulate why his claims were ripe, beyond arguing that if the Court "waited until a 'final decision'" was entered by OCIF, . . . [Plaintiff's] rights would be beyond repair because he would have been forced into a sham final hearing without even the benefit of full discovery in an action that the agency had no authority to pursue in the first place." (**ECF 35 at 16**). In other words, prior to the stay of the Administrative Proceedings, Plaintiff's only theory as to why the instant case was

ripe was that even being *subject* to any Administrative Proceedings conducted by the OCFI would violate his constitutional right to due process, regardless of the outcome of the Proceedings. Despite bearing the burden to demonstrate ripeness, *Lab. Rels. Div.*, 844 F.3d at 326, Plaintiff has failed to allege any facts or provide any explanation as to why merely having to participate in the Administrative Proceedings would violate his rights "beyond repair," such that the Proceedings must be enjoined before resulting in a final determination.

And, even if the Court *were* to accept Plaintiff's contention that he faced a threat to his constitutional rights simply from having to participate in the process of adjudicating the claims made against him before the OCFI, any such concern has now been resolved. The Administrative Proceedings before the OCFI have been stayed and cannot proceed "until the complaint filed by receiver Driven is resolved." (**ECF 52-3 at 1**). In turn, the Driven Case brings "the same claims and seeks the same relief as" the claims brought against Plaintiff in the Administrative Complaint. (**ECF 44 at 1**). In other words, Plaintiff's wish has been granted: rather than needing to adjudicate the claims against him in a "sham final hearing" before the OCFI, Plaintiff will now adjudicate them before a neutral body, the Federal District Court for the Southern District of Florida, with the benefit of full discovery. Whether, once the Driven Case has resolved, the Administrative Proceedings before the OCFI resume, and ultimately result in a final determination that Plaintiff wishes to challenge, are clearly "contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Reddy*, 845 F.3d at 500. Because the continued existence of Plaintiff's claims depends on this long "chain of contingencies" which "may or may not come to pass," Plaintiff has failed to establish the fitness prong of the test for ripeness. *McInnis-Misenor*, 319 F.3d at 72.

Plaintiff has also failed to demonstrate that he faces any hardship if this Court declines to entertain his claims at this premature stage. As outlined above, to the extent Plaintiff believes OCFI cannot be a fair adjudicative body for the claims against him, the filing of the Driven Case actually benefits Plaintiff, by allowing him to instead adjudicate those same claims before a different forum. And, in Plaintiff's own words, the instant suit was filed not because he is suffering ongoing harm, but because he believes he "*will* be damaged" if the Administrative Proceedings eventually result in an enforceable final determination against him. *See* (**ECF 22 at 2 n.1**). The Court is under no obligation to expend further resources on such a "wholly contingent" threat of harm. *W.R. Grace*, 959 F.2d at 367.

## V. Conclusion

Because Plaintiff's claims are not ripe, this Court lacks subject matter jurisdiction to adjudicate the instant case and must dismiss it in its entirety. *Menéndez*, 67 F. Supp. 2d at 45. Defendants' Motion to Dismiss is **GRANTED**, and the case is dismissed without prejudice.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 17th day of March, 2025.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**